# United States Court of Federal Claims

No. 16-671 C
(Filed: August 26, 2016)
Reissued: September 22, 2016[1]

|  |  |  |
|---|---|---|
| DELLEW CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | Bid Protest |
| Defendant | ) | |
| | ) | |
| and | ) | |
| | ) | |
| TECH SYSTEMS, INC., | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |
| | ) | |

*Adam Kamlot Laskey*, Oles, Morrison, Rinker, & Baker, L.L.P., Seattle, WA, attorney for plaintiff.

*Erin Kathleen Murdock-Park*, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC, attorney for defendant.

*Eric Scott Crusius*, Miles & Stockbridge, P.C., Tysons Corner, VA, attorney for defendant-intervenor.

## OPINION AND ORDER

**SMITH, Senior Judge**

This bid protest arises out of the problem at the very core of procurement law. We do not trust the discretion of procurement officials or contractors, but we cannot make rational procurement decisions without that discretion. This dispute occurs at the border where the law and regulations set up a check point of objective criteria. These are designed to eliminate and

---

[1] An unredacted version of this opinion was issued under seal on August 26, 2016. The parties were given an opportunity to propose redactions, and those redactions are reflected herein.

contain that untrustworthy and unquantifiable discretion.  Objective decisions are so much easier and honest, but discretion breaks through our border against the nonobjective.  It breaks through for one reason.  It is needed, and it is essential in matching the objective facts of offerors' proposals with the circumstances and purposes of each specific government procurement.

   This problem is particularly emphasized here because the defendant-intervenor's narrow margin of victory over the plaintiff appears to be the result of a few factors where discretion played the key role.  In this stylized almost ritualistic version of the private procurement world, gut instincts are to be suppressed.  Procedures are designed as much to limit the discretion of contracting officers as to obtain the best product for the government.  The scheme that has been created inevitably leads to procurement decisions that, on a number of occasions, lack transparency.  Despite this, the Court must decide bid protests as they arise.  In this case, the Contracting Officer could have reasonably awarded the contract to either Dellew or TSI, but he ultimately awarded the procurement to TSI.  The Court, however, cannot overturn this decision, as it is clear that the Contracting Officer acted within the zone of reason and within the bounds of his discretion in making this close call.  It was not arbitrary and capricious or an abuse of discretion based upon the facts available in the Administrative Record.

   This post-award bid protest comes before the Court on the parties' cross-motions for judgment on the Administrative Record.  Plaintiff, Dellew Corporation ("Dellew"), challenges the United States Army Contracting Command – Rock Island's (the "Agency") Solicitation No. W52P1J-13-R-0038 ("Solicitation," "Request for Proposals," or "RFP").  Plaintiff alleges that the Agency failed to follow the RFP's stated evaluation criteria and applicable procurement law in evaluating past performance, and it failed to perform and/or document an adequate cost realism analysis.  Plaintiff requests that the Court declare that (1) the award of the contract to TSI was arbitrary, capricious, and contrary to law and the terms of the RFP; (2) the contract awarded to TSI must be terminated for convenience; and (3) the Agency be directed to reevaluate proposals in accordance with the RFP criteria and the FAR, and award the contract to the offeror that represents the best value.  For the reasons explained below, plaintiff's motion for judgment on the Administrative Record is denied, and defendant and defendant-intervenors' cross-motions for judgment on the Administrative Record are granted.

## I.  Factual and Procedural History

   On or about September 27, 2013, the Agency issued Solicitation No. W52P1J-13-R-0038 for logistical support services at Schofield Barracks, Hawaii.  Amended Complaint (hereinafter "Am. Compl.") at 3.  The RFP was issued as a set-aside for small business Basic Ordering Agreement ("BOA") holders in the Agency's Enhanced Army Global Enterprise ("EAGLE") program.  *Id.* at 4.  The RFP contemplated the award of "a single combination Cost Plus Fixed Fee ("CPFF") contract with a Firm Fixed Price CLIN ("Transition CLIN") task order with a 60-day transition period, one (1) ten (10) month base period and four (4) one (1) year options."  *Id.* The fixed price portion was only applicable to the transition period, and the remainder of the contract was CPFF.  *Id.*

The RFP evaluated proposals in three phases.  In Phase 1, the Agency made sure the offeror had the required facility security clearance.  *Id.*  In Phase 2, offerors' technical proposals were evaluated on an Acceptable/Unacceptable basis.  *Id.*  In Phase 3, offers were evaluated on Past Performance and Cost/Price factors.  *Id.*  The Agency then conducted a best value tradeoff analysis.  *Id.*  According to the RFP, the total evaluated price must include the total of an offeror's proposed price for the base period, four subsequent option periods plus one-half of the fourth option, and any identified probable cost adjustments resulting from the Agency's cost realism analysis.  *Id.*  The RFP stated that the "Firm Fixed Price and Cost Proposals will be evaluated on price analysis and cost realism IAW FAR 15.404-1, Proposal Analysis Techniques."  *Id.* at 4-5.  The RFP also required each offeror (and its major subcontractors/teammates) to provide historical and budgeted indirect rate data for several items including overhead, general and administrative ("G&A") expenses, and fringe benefit costs.  *Id.*

In response to the RFP, the Agency received proposals from 21 offerors.  *Id.* at 5. Fourteen offerors made it to Phase 2.  *Id.*  Six offerors made it to Phase 3, including Dellew and TSI.  *Id.*  The Agency then engaged in discussions with the remaining offerors.  *Id.*  During discussions, Dellew agreed to cap its G&A rates for the duration of the contract.  *Id.*  In its discussions with TSI, the Agency asked TSI to cap its G&A rates twice, to which TSI refused. *Id.* at 6.

On or about October 27, 2014, the Agency completed its cost/price evaluation of proposals, including a cost realism analysis.  *Id.* at 7.  As part of the analysis, the Agency considered the realism of each offerors' indirect rates, including G&A rates.  *Id.*  The Agency's Cost/Price Team ("CPT") performed the analysis.  *Id.*  The Source Selection Evaluation Board ("SSEB"), the Source Selection Advisory Council ("SSAC"), and the Source Selection Authority ("SSA") "fully relied" on the CPT's cost realism analysis.  *Id.* at 8.  Based on total evaluated prices, TSI was the lowest priced technically acceptable offeror (***), and Dellew was the second lowest priced technically acceptable offeror (***).  *Id.*  TSI and Dellew were both rated Substantial Confidence on the past performance factor.  *Id.*

On November 14, 2014, the Agency accepted TSI's final proposal and sent TSI an award package which included a contract.  *Id.* at 8-9.  The contract included a cap on TSI's G&A rate. *Id.* at 9.  TSI objected to the inclusion of the G&A rate cap in the contract.  *Id.*  The Agency informed TSI that it would lose the award unless TSI agreed to cap the G&A rate.  *Id.*  TSI signed the contract.  *Id.*

On November 24, 2014, Dellew filed a protest with the Government Accountability Office ("GAO") challenging the award of the contract to TSI.  *Id.*  Dellew argued the contract to TSI was improper because: (1) TSI refused to cap its proposed G&A rates despite the requirement in the RFP; (2) the contract award materially differed from the proposal TSI submitted; and (3) the Agency failed to perform an adequate cost realism analysis.  *Id.* at 9. GAO denied Dellew's protest.  *Id.*  On March 11, 2015, Dellew filed a bid protest action in this

Court (No. 15-251C) challenging the award to TSI based on the same reasons asserted at GAO. *Id.* at 10.  Counsel for the Agency contacted Dellew two weeks later and stated that the Agency was taking voluntary corrective action in response to Dellew's protest.  *Id.*  The Agency terminated the contract for convenience on April 3, 2015, and, as a result, the Court dismissed the case as moot.  *Id.*

After taking corrective action, the Agency notified Dellew on July 16, 2015, that it again awarded the contract to TSI.  *Id.*  On July 30, 2015, Dellew filed a post-award bid protest challenging the award to TSI (No. 15-808C) based on the same or similar arguments it raised in its earlier protests.  *Id.* at 11.  The Court heard oral argument on the parties' cross-motions for judgment on the Administrative Record on October 22, 2015.  *Id.* at 12.  The Agency again decided to take voluntary corrective action.  *Id.*  Specifically, the Agency stated that it would:

> (1) Terminate for convenience the award to TSI; (2) amend the RFP to reflect a change in conditions that has occurred since the last amendment to the RFP, and clarify § L.5.4.2.7.5(d) of the RFP, which sets forth the requirements governing the capping of an offeror's indirect rates; (3) reopen discussions and request full revised technical and costs proposals from the final six offerors; (4) require offerors and their subcontractors to confirm that their indirect rates are capped, or to verify their understanding that the Army will cap their indirect rates at those listed in their proposals, if meeting the conditions in § L.5.4.2.7.5(d) of the RFP; (5) conduct a new cost realism analysis of the offerors and their subcontractors; and (6) make a new best value determination and award the contract accordingly.

*See Dellew Corp. v. United States*, 124 Fed. Cl. 429, 430 (2015).

The Court dismissed Dellew's protest as moot again.  *See Id.* at 432.  On May 5, 2016, the Court issued an opinion and order awarding Dellew its attorneys' fees and expenses incurred in the second COFC protest pursuant to the Equal Access to Justice Act.  *Id.* at 13.  On November 13, 2015, the Agency took corrective action and terminated for convenience the contract award to TSI.  *Id.*  The Agency then amended the RFP and re-opened discussions with six offerors that had been in the most recent competitive range, including Dellew and TSI.  *Id.*  The corrective actions taken by the Agency included material changes to the scope of work.  *Id.*  In response to the changes, Dellew submitted a new proposal.  *Id.*

On May 24, 2016, the Agency awarded the contract to TSI again.  *Id.* at 14.  The Agency provided Dellew with a written debriefing explaining that both TSI and Dellew had been rated Acceptable on the Technical Factor and Substantial Confidence on the Past Performance factor.  *Id.*  The Agency also informed Dellew that no cost realism adjustments had been made to either TSI or Dellew's proposed price.  *Id.*  Both Dellew's and TSI's proposals were rated equally on the non-price factors.  *Id.*  Dellew's total evaluated price was lower than TSI's.  *Id.*  The Agency stated that it chose TSI on the grounds that "it was determined that Tech System's Inc. (TSI)'s proposal offered the best value to the Government."  *Id.*  Dellew also requested an oral

debriefing in which the Agency explained that it had "slightly" more confidence in TSI because Dellew lacked recent and relevant past performance in the area of transportation.  *Id.* at 14-15.

This complaint followed, challenging the Agency's failure to follow the RFP's stated evaluation criteria and applicable procurement law in the evaluation of past performance and the Agency's failure to perform and/or document an adequate cost realism analysis.

## II.      Discussion

### A.  Standard of Review

This Court's jurisdictional grant is found primarily in the Tucker Act, which provides the Court of Federal Claims the power "to render any judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).  This Court has jurisdiction over bid protest actions pursuant to 28 U.S.C. § 1491(b).  The Court evaluates bid protests under the Administrative Procedure Act's standard of review for an agency action.  *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005) (citing *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).  Under Rule 52.1 of the Rules of the Court of Federal Claims, the parties are limited to the Administrative Record, and the Court makes findings of fact as if it were conducting a trial on a paper record.  *See id.* at 1354. Looking to the Administrative Record, the Court must determine whether a party has met its burden of proof based on the evidence in the record.  *Id.* at 1355.

Standing in bid protests is framed by 28 U.S.C. § 1491(b)(1) which requires the bid protest to be brought by an "interested party."  A protestor is an "interested party" if it is an "(1) actual or prospective bidder and (2) possess[es] the requisite direct economic interest."  *Weeks Marine, Inc., v. United States*, 575 F.3d 1359 (Fed. Cir. 2009) (citing *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1308 (Fed. Cir. 2006)).  "To prove a direct economic interest as a putative prospective bidder, [the bidder] is required to establish that it had a 'substantial chance' of receiving the contract."  *Id.*; *see also Info. Tech. & Appl. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003) ("To establish prejudice, [the protestor] must show that there was a 'substantial chance' it would have received the contract award but for the alleged error in the procurement process."); *see also Statistica, Inc. v. Christopher*, 102 F.3d 1577, 1580 (Fed. Cir. 1996).  The nature of the protest will dictate the necessary factors for a "direct economic interest."  *Sys. Appl. & Techs. v. United States*, 691 F.3d 1374, 1382 (Fed. Cir. 2012).

### B.  Past Performance

In analyzing offerors' bids, the Agency conducted a past performance evaluation.  Dellew argues that the Agency was defective in its evaluation of past performance in the following four ways: (1) the Agency failed to give Dellew credit for the transportation experience of its partner,

\*\*\*; (2) the Agency was unreasonable in its conclusion that Dellew's incumbent subcontract was not relevant; (3) the Agency unreasonably concluded that TSI's \*\*\* subcontract was relevant; and (4) the Agency was unreasonable in crediting TSI with past performance of an affiliate of its subcontractor, \*\*\*.  Plaintiff's Motion for Judgment on the Administrative Record (hereinafter "P's MJAR") at 25-30.

The most persuasive of these complaints is plaintiff's argument regarding \*\*\*'s transportation past performance.  Plaintiff alleges that the Agency unreasonably failed to credit Dellew with \*\*\*'s transportation experience.  *Id*. at 25.  Dellew argues that it was only credited with \*\*\*'s Maintenance and Supply experience, despite the fact that \*\*\*'s Contract \*\*\* purportedly included transportation.  *See* Administrative Record page (hereinafter "AR") 16785.  Essentially, plaintiff argues that, because the cost of the contract exceeded $640,000, the Agency should have considered it relevant transportation experience during its past performance evaluation.  *See* P's MJAR at 25-26; *see also* AR 16785.

Both Dellew and TSI received the highest rating in the maintenance and supply categories of past performance.  However, unlike TSI, which also received the highest rating in the transportation prong of past performance, Dellew only received a neutral rating on the transportation factor.  This Court agrees, based on the Administrative Record and the rules governing the evaluation past performance, that the plaintiff should have received credit for \*\*\*'s transportation past performance.  However, this Court also agrees with defendant's assertion that the Agency's failure to credit Dellew with \*\*\*'s past performance did not prejudice Dellew.  Defendant's Cross-Motion for Judgment on the Administrative Record (hereinafter "D's CMJAR") at 23.  \*\*\*'s transportation past performance only amounted to $5.6 million, while TSI's transportation past performance totaled around $251,262,732.  AR 16785; AR 4287-90.

The Army indicated that it had more confidence in TSI's ability to perform under the contract due to its extensive transportation experience.  AR 10282.  The government is not required to accept the lower bid in procurement contracts.  The FAR provides that "[t]he perceived benefits of the higher proposal should merit the additional cost."  FAR 15.101-1(c).  While the government is required to document their rationale for those tradeoffs, an Agency is not required to provide an exact quantification of the non-cost factors in its tradeoff.  FAR 15-308; *see also Glenn Def. Marine Asia v. United States*, 105 Fed. Cl. 541, 582 (2012).  Furthermore, best-value tradeoff decisions "will be upheld unless the protestor can show that the agency's action was without rational basis."  *Impressa*, 238 F.3d at 1333.  This standard gives discretion to the Agency.

> [T]his court must defer to [the agency's] decision absent a showing that the [agency's] evaluation was arbitrary, capricious, or contrary to law. But that is not all.  The standard becomes more deferential when dealing with a negotiated procurement such as the one in this case.  And when a

procurement involves performance standards, which is what this court also
faces, a court must grant even more deference to the evaluator's decision.

*Overstreet Elec. Co. v. United States*, 59 Fed. Cl. 99, 117 (2003).

The ultimate question here is whether the government could consider the amount of
Transportation experience when evaluating the plaintiff's ability to perform the contract. This is
where discretion and objective criteria intersect. If this were a nongovernmental procurement,
the answer would be simple: of course, more experience is preferred when evaluating the past
performance of a potential contractor. Dollars, in this context, are a fairly good measure of a
potential contractors' amount of experience. As such, despite the fact that Dellew should have
been given credit for \*\*\*'s transportation past performance, this Court does not find that plaintiff
was prejudiced by its exclusion.

### C. Cost Realism Analysis

This procurement is a cost reimbursement contract. In analyzing solicitations for cost
reimbursement contracts, the Agency must undertake a cost realism analysis. The FAR requires
an agency to "independently review[] and evaluate[e] specific elements of each offeror's
proposed cost estimate to determine whether the estimated proposed cost elements are realistic
for the work to be performed." FAR 15.404-1(d)(1). Further, "[a]gencies are required to do
more than merely state that a cost realism analysis was performed." *A-T Solutions, Inc. v. United
States*, 122 Fed. Cl. 170, 180 (2015) (citing *Cohen Fin. Servs., Inc. v. United States*, 110 Fed. Cl.
267, 286-87 (2013)). For a cost realism analysis to be rational, the Agency must "make a good
faith effort to consider material facts that a reasonably prudent person would consider relevant to
the procurement decision, and cannot be 'tainted by irrational assumptions or critical
miscalculations.'" *United Payors & United Providers Health Servs. v. United States*, 55 Fed. Cl.
323, 330 (citing *OMV Med., Inc. v. United States*, 219 F.3d 1337, 1344 (Fed. Cir. 2000));
*Westech Int'l, Inc. v. United States*, 79 Fed. Cl. 272, 286 (2007). Despite plaintiff's arguments,
this Court finds that the Agency's cost realism analysis was rational.

Plaintiff argues that the Agency failed to perform an adequate cost realism analysis in the
following three ways: (1) the Agency did not adequately conduct a cost realism analysis
regarding TSI's proposed direct labor rates; (2) the Agency failed to adequately conduct a cost
realism analysis regarding TSI's proposed G&A rate; and (3) the conflicting information
concerning \*\*\*'s overhead rate should have rendered TSI's proposal unacceptable. P's MJAR at
32-39. This Court does not find these arguments persuasive. The Agency conducted its cost
realism analysis without violating the basic principles of cost analysis, without bias, and with
reasonably reliable data.

### 1.   Direct Labor Rates

Plaintiff's argument that the Agency failed to adequately conduct a cost realism analysis regarding TSI's direct labor rates is two-pronged.  The first part of this argument posits that the Agency unreasonably relied on the inapplicable salary reference data submitted by TSI for proposed exempt labor wage rates.  *Id*. at 32.  TSI used wage data from Salary.com in its proposal.  Plaintiff alleges that this data was inapplicable for three reasons.  First, plaintiff contends that the data used was stale because the data reflected 2014 numbers, and the contract period was set to begin in July 2016.  *Id*. at 33.  Second, plaintiff alleges that TSI's Salary.com data was inapplicable because applied to Hawaii National Park instead of Schofield Barracks ("SBHI"), which is located 200 miles away from the national park.  *Id*.  Third, plaintiff argues that TSI's data was misleading because TSI only provided "base salary" data but excluded vacation and holiday pay.  *Id*.  Plaintiff posits that, taken together, these deficiencies result in an unrealistic wage data figure, and, in order to achieve an accurate cost realism analysis, the Agency should have upwardly adjusted TSI's total proposal approximately \*\*\*.  *Id*. at 34-35.

Both defendant and defendant-intervenor argue that the Salary.com data was realistic. First, defendant-intervenor points out that TSI was not required to submit 2016 salary data. Defendant-Intervenor's Cross Motion for Judgment on the Administrative Record (hereinafter DI's CMJAR) at. 9.  The initial proposals were due on November 25, 2013.  AR 71.  After a number of discussions, TSI submitted its final proposal revision on October 6, 2014, citing to Salary.com wage data from May 28, 2014.  DI's CMJAR at 9-10.  Although proposals have been revised since that date, none of the revisions were required to update their wage data.  *Id*. at 10. Additionally, defendant-intervenor highlights the fact that plaintiff made the assertion that TSI's wage data was stale without providing any evidence of what the numbers should be.  *Id*. at 11. This argument is again repeated in regards to plaintiff's allegations that the use of Hawaii National Park data was unreasonable.  *Id*. at 12.  Finally, regarding the alleged exclusion of holiday and vacation pay from TSI's wage rates, defendant-intervenor points to the Agency's statement that "[t]he analyst reviewed the assumptions accompanying the proposed exempt hourly rates, and the calculations provided by TSI and since all exempt hourly rates were provided within the 50% median from Salary.com and supported, no adjustments were required for the proposed exempt rates."  AR 15263.

The second prong of plaintiff's argument alleges that the Agency failed to examine whether TSI's proposed wage rate for its system administrator position was realistic, despite the fact that it was misclassified as a non-exempt Service Contract Act ("SCA") employee position. P's MJAR at 35.  Plaintiff argues that, in order for the Agency to perform an accurate side-by-side comparison of the offerors, TSI should have included the systems administrator position as a non-exempt SCA employee.  *Id*.  As TSI neglected to include the systems administrator position in the non-exempt category, plaintiff contends that the proposed wage was unrealistically low for that position.  *Id*. at 36.  As a result, plaintiff posits that TSI's total proposed cost was \*\*\* lower than it realistically should have been.  *Id*.

The FAR requires that employees be paid not less than the minimum wage and receive fringe benefits.  FAR 52.222-41(c).  For non-exempt employees, offerors are required to pay at least the minimum wage and fringe benefits.  FAR 52.222-41(c)(2).  The systems administrator position was classified under SCA wage code 14043, and allotted an hourly wage rate of $22.80.  AR 13719, 12754.  As this wage rate meets the minimum required by SCA 14043, the wage proposal is satisfactory.  Further, we agree with defendant's assertion that the exclusion from the side-by-side comparison does not demonstrate a lack Agency review.  D's CMJAR at 38.  The Agency has demonstrated that it "considered the information available and did not make 'irrational assumptions or critical miscalculations."  *Westech Int'l*, 79 Fed. Cl. At 286.  To require more would be infringing on the Agency's discretion in analyzing proposals for cost realism.

### 2.   G&A Rates

In addition to its arguments regarding TSI's direct labor rates, plaintiff alleges that the Agency failed to adequately conduct or document a cost realism analysis regarding TSI's G&A rates.  P's MJAR at 36.  Plaintiff contends that TSI's G&A rates were "significantly lower" than its historic rates, despite the Agency's determination that TSI's proposed rates "appear to be correct and realistic."  *Id*. at 36-37.  Ignoring that determination, plaintiff alleges that the lack of adequate cost realism analysis of TSI's G&A rates "creates a substantial risk that TSI's actual cost of performance is unknown."  *Id*. at 37.

Again this Court must reiterate that cost realism analyses are "within the agency's 'sound discretion and expertise,' [and] the Court will not overturn a cost realism determination unless the plaintiff demonstrates the absence of a rational basis for the agency's discretion."  *A-T Solutions*, 122 Fed. Cl. 180.  TSI provided evidence to support its original contention that G&A rates would be lower in the future than they had been in years past.  For example, in 2012, TSI incurred nearly *** in unexpected and unusual legal fees.  AR 13757.  Additionally, TSI documented its reasons for lowered G&A rates, and the Agency "reviewed the [] narrative as compared to TSI's proposal and found that the narrative reflected its proposed rate data."  AR 15272.  As such, TSI's G&A rates were not irrational or unreasonable.

### 3.   ***'s Overhead Rate

Third, plaintiff argues that *** submitted conflicting information regarding the calculation and application of its overhead rate, which prevented an accurate cost realism analysis.  P's MJAR at 38.  As a result of this ambiguity, plaintiff posits that "a meaningful cost realism analysis cannot be performed, [and] TSI's proposal must be rejected."  *Id*.  In making this contention, plaintiff points to the FAR, which states that a cost realism analysis must include reasonable "judgment to determine how well the proposed costs represent what the cost of the contract should be."  FAR 15.404-1(c)(1).

Once again, it is important to note that "[i]t is unnecessary for an agency to demonstrate that a required cost realism analysis was conducted with 'impeccable rigor.'" *A-T Solutions*, 122 Fed. Cl. at 180. The Agency was not confused by TSI's interchangeable use of "total annual labor costs" and "total direct labor costs." D's CMJAR at 43. As such, it was reasonable for the Agency to proceed with its cost realism analysis without specifically addressing this alleged ambiguity, and the cost realism analysis was rational despite TSI's word choice.

### D. Prejudice

As noted earlier, this bid protest turns on the problem at the core of procurement law: how can we navigate the delicate balance between our distrust of an Agency's discretion and our inability to make rational procurement decisions without that discretion? This dispute occurs at the intersection where the law and regulations have created objective criteria designed to eliminate discretion, but where the same discretion is essential to reconcile the specific facts and circumstances of a solicitation to the Agency's needs when making the award. This is highlighted here because TSI was awarded the contract by a very narrow margin, and that award turned on the Agency's discretion. In this case, the purely objective facts were inconclusive as to what was the best deal for the government.

Plaintiff contends that it was prejudiced by the errors the Agency made in awarding the contract to TSI. According to Dellew's view, but for the errors committed during the procurement process, "there is a substantial chance that Dellew would have been deemed best value and awarded the contract." P's MJAR at 39-49. Plaintiff points to the alleged errors made in evaluating past performance and analyzing cost realism to support this contention. *Id.* at 40-41. This Court does not agree that prejudice exists here.

This protest exists in a stylized, almost ritualistic version of the private procurement world, in which regulations were designed to limit the discretion of contracting officers without sacrificing the government's need to obtain the best product available. Discretion must have a role, or agencies would be forced to base their procurement decisions on the actual bid price alone. This Court finds that the Contracting Officer rationally exercised his discretion in awarding the contract to TSI, and that decision was neither arbitrary nor capricious. It violated no law or regulation that was raised during this bid protest. While, like all procurement decisions, this award was certainly not perfect, as witnessed by its history, the factual and procedural history support a finding that this award did not violate any rules or any notions of fairness among bidders.

### III.     Conclusion

For the reasons set forth above, plaintiff's MOTION for Injunctive and Declaratory Relief is DENIED. Additionally, defendant and defendant-intervenor's CROSS-MOTIONS for Judgment on the Administrative Record are GRANTED. The Clerk is directed to enter judgment

on the Administrative Record in favor of defendant and defendant-intervenor, consistent with this Opinion.[2]

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith,
Senior Judge

---

[2] This opinion shall be unsealed, as issued, after September 9, 2016, unless the parties identify protected and/or privileged materials subject to redaction prior to that date.  Said materials shall be identified with specificity, both in terms of the language to be redacted and the reasons therefor.